IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FLOYD COZORT : | | |
| 4848 Enlow Rd. : | | |
| Athens, Ohio 45701 : | Case No. | |
| : | | |
| Plaintiff, : | Judge: | |
| : | | |
| v. : | Magistrate: | |
| : | | |
| BUCKINGHAM COAL CO., LLC : | | |
| c/o Cogency Global Inc. : | | |
| 3958-D Brown Park Dr. : | | |
| Hilliard, Ohio 43026 : | | |
| : | | |
| and : | | |
| : | | |
| WESTMORELAND RESOURCE : | | |
| PARTNERS, LP : | | |
| c/o Cogency Global Inc. : | | |
| 3958-D Brown Park Dr. : | | |
| Hilliard, Ohio 43026 : | | |
| : | | |
| Defendants. : | | |

**COMPLAINT WITH JURY DEMAND ENDORSED HEREIN**

Plaintiff Floyd Cozort brings this action individually and as putative representative for a collective action under Section 16 of the Fair Labor Standards Act, 29 U.S.C. § 216.

Plaintiff, on behalf of himself in his individual claims, and on behalf of himself and other employees who are "similarly situated," brings this action for unpaid overtime compensation, and for damages arising out of other wage and hour violations.  In addition to collective claims under the Fair Labor Standards Act, Plaintiff also asserts an individual claim of retaliation in violation of the Fair Labor Standards Act.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§1331, 1332, and/or 1337 and 29 U.S.C. §216(b)

2. Venue is proper in this district and division pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this district and division and all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred there.

## PARTIES

3. Plaintiff Cozort (hereinafter "Plaintiff") is a citizen of the United States and a resident of Athens County, Ohio.

4. Plaintiff was employed by Defendants at the Buckingham Coal mine located in Glouster, Ohio.

5. His dates of employment were September 26, 2003 until March 8, 2018.

6. At the time of his termination, he was employed as a scoop operator, but had previously worked in several other positions throughout the mine, including Section Foreman.

7. Plaintiff was a non-exempt hourly employee.

8. Defendant Buckingham Coal Company, LLC is an Ohio LLC with principal operations in Athens, Ohio.

9. Defendant Westmoreland Resource Partners, LP is a foreign Limited Partnership and the corporate parent of Defendant Buckingham Coal Company, LLC. Westmoreland is licensed and registered to do business in the State of Ohio.

10. Westmoreland's corporate offices are located in Colorado.

11. Defendants are in the coal mining business.

12. Defendants are employers and form an "integrated enterprise" as that term defined by the FLSA in that they perform related activities, under unified operations or common control, and

for a common business purpose. These business entities operate as a common enterprise and are joint employers because employees of these entities perform work which simultaneously benefits two or more of the entities.

13. Defendant Westmoreland controls the day to day operations of Defendant Buckingham.

14. Defendant Westmoreland establishes and administers pay and personnel policy for Defendant Buckingham.

15. Defendant Westmoreland has final decision making authority with regard to pay and personnel decisions of Defendant Buckingham.

16. The Defendants have common ownership and management.

17. Defendants are employers as that term is defined by the FLSA, 29 U.S.C. §203(d).

## FACTS

18. At all relevant times herein, Plaintiff and similarly situated members of the putative class were W2 employees of Defendants and worked in non-exempt, hourly positions.

19. During their employment with Defendants, Plaintiff, and similarly situated members of the putative class, regularly worked 40 or more hours per week.

20. Plaintiff, and similarly situated members of the putative class, have been paid their regular hourly rate of pay for some, but not all, hours worked.

21. Plaintiff, and similarly situated members of the putative class, have been paid one and one-half times their regular hourly rate of pay for some, but not all, hours worked in excess of 40 hours per work week.

22. Throughout Plaintiff's employment Defendants have routinely and unlawfully edited his timesheet, and the timesheets of similarly situated members of the putative class, to reduce the number of overtime hours paid.

23. During all relevant times herein, Defendants had an "unwritten" policy that employees would not be paid overtime unless that overtime equaled 30 minutes or more.

24. Plaintiff and similarly situated members of the putative class were not paid for overtime that was less than 30 minutes.

25. Plaintiff and similarly situated members of the putative class tag in and out for their shifts on a tag-in board kept in the Lamp House at the pit of the mine.

26. Required personal protective safety gear is also stored in the lamp house.

27. Plaintiff and similarly situated members of the putative class are required to report to the lamp house no less than ten minutes before the start of their shift in order to don required safety gear and to tag in.

28. The safety gear, which each employee is required to don, includes a one hour, self-contained self-rescuer, a methane detector, a proximity detector, and a mine site phone. This gear is required by MSHA and NIOSH regulations.

29. Prior to entering the mine, the methane detector and proximity detector must be calibrated.

30. Donning this gear is an integral and indispensable part of the principal activities performed by Plaintiff and similarly situated members of the putative class.

31. Gathering, calibrating, and donning the safety gear sometimes takes up to 20 minutes.

32. The mine environment is inherently dangerous. One of the greatest risks that miners are exposed to is explosion due to the build-up of methane gas. The methane detectors worn by employees guard against exposure to this risk.

33. MSHA and NIOSH regulations and guidelines require that miners have access to self-contained self-rescuers: equipment that either supplies oxygen to the miner or converts air inhaled by the miner into oxygen, in the event the miner becomes trapped below ground.

4

34. Plaintiff and similarly situated members of the putative class are required to be on the man trip at the beginning of their shift.

35. The man trip is the device that transports employees to their underground work stations in the mine.

36. Plaintiff was assigned to work first shift from 6:00 a.m. to 4:00 p.m.

37. He and similarly situated members of the putative class are paid from 6:00 a.m. until 4:00 p.m. without regard to the actual time they tag in and out.

38. Employees working other shifts are also paid from the beginning of their shift until the end of their shift without regard to the actual time they tag in and out.

39. Defendants routinely white out and change the time entries made by Plaintiff and similarly situated members of the putative class.

40. There are approximately 40 to 50 miners working on each shift.

41. In order to don safety gear and tag in, Plaintiff and similarly situated members of the putative class must arrive at the lamp house at least 15 minutes before the start of their shift.

42. Plaintiff and similarly situated members of the putative class (on first shift) board the man trip at and after 4:00 p.m. and do not receive pay for the time it takes to get to the surface of the mine, to doff their safety equipment and return it to the lamp house and tag out.

43. Plaintiff and similarly situated members of the putative class must wear the safety equipment until they arrive at the surface.

44. Some members of the putative class, those working the "Hot Seat," do not arrive at the surface until approximately 4:25 p.m. and by the time they doff their equipment and tag out, the time is 4:20 to 4:30 p.m. They are only paid until 4:00 p.m.

45. At the end of every shift, the section boss writes in the "out" time for each worker. The section boss is stationed in the office and does not know when workers actually reach the lamp house to doff their equipment.

46. Upon information and belief, employees working other shifts do not receive compensation for the time it takes to get to the lamp house and doff their equipment.

47. Once the Defendants edit a time entry, Plaintiff and other members of the putative class do not have access to their original time entry because Defendants control the timekeeping system.

48. Plaintiff estimates that, just since January 2018, he lost sixty (60) hours of pay due to the unlawful edits to his time entries.

49. Upon information and belief, over time, Defendants' unlawful time edits have similarly deprived members of the putative class from receiving pay, including overtime pay.

50. Defendants' practice of changing time entries violates wage and hour regulations.  See, for example, 29 CFR §785.47.

51. The amount of overtime pay that Plaintiff and members of the putative class have lost is not de-minimis or insignificant.

52. Defendants' policy and practice is to pay Plaintiff, and similarly situated members of the putative class, less than the amount due for all overtime hours worked.

53. At all relevant times to this action, Defendants have been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

54. Upon information and belief, Defendants' employees were engaged in interstate commerce and Defendants have annual gross volume sales and/or business in an amount not less than $500,000.00.

55. During relevant times, Defendants suffered and permitted Plaintiffs, and similarly situated members of the putative class, to work outside their normal shift, both tagging in early and staying late, while not compensating them for all such hours worked.

56. Upon information and belief, Defendants, at all times relevant hereto, were fully aware of the fact that they were legally required to comply with the wage and overtime payment laws of the United States.

57. During relevant times herein, Defendants had knowledge of and acted willfully in regard to their conduct described herein.

58. Defendants are in possession and control of necessary documents and information from which Plaintiff, and similarly situated members of the putative class, would be able to precisely calculate damages, or, in the alternative, Defendants otherwise failed to keep the required records.

59. By the conduct described in this Complaint, Defendants have violated the FLSA by failing to pay its employees, including Plaintiff, and similarly situated members of the putative class, overtime wages they have earned and to which they are entitled by law.

60. In or around January 2018 Plaintiff grew increasingly frustrated with the fact that he and his co-workers were not being properly compensated for all of their work time.

61. Plaintiff's previous efforts to unionize the mine had been unsuccessful because his co-workers were afraid of reprisal.

62. Plaintiff began posting copies of State of Ohio labor laws and regulations at the bath house where hourly employees meet to catch their bus to the work site.

63. He was hoping to make his co-workers aware of the Defendants' wage and hour violations.

64. He also complained to foreman about Defendants' failure to pay for all hours worked.

65. One Foreman warned him that he should watch what he says and who he says it to because, "they are after you." Plaintiff understood this to mean that management was looking for a way to fire him.

66. On February 28, 2018 Mine Safety personnel were on site at the mine to conduct noise tests.

67. Plaintiff and other employees where required to wear dba monitors to calculate the noise exposure for individual employees.

68. During the noise exposure test, Plaintiff and other employees were hollering back and forth at one another.

69. On March 8, 2018 Plaintiff came to work as usual but was suspended with intent to dismiss.

70. On March 9, 2018 Plaintiff was terminated for attempting to sabotage the noise exposure test.

71. Plaintiff did not intend to sabotage the noise exposure test.

72. Upon information and belief, Plaintiff was terminated because of his wage and hour complaints and his efforts to rally employees around this issue.

## CLASS ALLEGATIONS

73. The Named Plaintiff brings this FLSA claim pursuant to 29 U.S.C. §216(b) as a representative action on behalf of himself and all other Similarly Situated Persons ("SSPs") of the opt-in class, consisting of:

    All current and former employees of Defendants who have worked as hourly, non-exempt mine laborers who, in the previous three (3) years, tagged in and out pursuant to company policy but whose time entries were edited to reduce the number of overtime hours for which the Class Members were paid and who were not compensated for the time donning and doffing required safety gear. (Henceforth, the "216(b) Class" or the "216(b) Class Members").

74. Examples of employees that may be members of the 216(b) Class include, but may not be limited to, miners, fire bosses, water pumpers, miner men, scoop operators, etc. working at locations in Ohio and throughout the United States.

75. The 216(b) Class Members are not exempt from the FLSA minimum wage and overtime regulations.

76. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) as to claims for overtime compensation, compensation withheld in violation of the FLSA, liquidated damages and attorneys' fees under the FLSA. In addition to the Named Plaintiff, numerous putative 216(b) Class Members have been denied proper compensation due to Defendants' company-wide payroll policies and practices. The Named Plaintiff is a representative of those other similarly situated employees and is acting on behalf of their interests as well as his own in bringing this action.

77. The identities of the putative 216(b) Class Members are known to Defendants and are readily identifiable through Defendants' personnel and payroll records. These individuals may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. §216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

78. Conditional certification of this case as a collective action pursuant to 29 U.S.C. §216(b) is necessary and appropriate so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

79. Plaintiff is unable to state at this time the exact size of the potential class, but upon information and belief, aver that it consists of at least ninety (90) persons.  Such persons are known to Defendants and are easily identifiable through the payroll records Defendants are required to maintain pursuant to the FLSA.

80. All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

81. The Plaintiff has retained competent and experienced counsel who can ably represent the interests of the entire Class.

### COUNT I
### FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME

82. All of the preceding paragraphs are re-alleged as if fully rewritten herein.

83. The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per work week. 29 U.S.C. § 207(a)(1).

84. During the three years preceding the filing of this Complaint, Defendants employed the Named Plaintiff and the 216(b) Class Members.

85. Defendants arbitrarily edited the timesheets of the Named Plaintiffs and the 216(b) Class Members thereby denying them overtime wages for hours worked in excess of forty hours per workweek.

86. During the three years preceding the filing of this Complaint, Defendants failed to pay Plaintiff and the 216(b) Class Members for time spent donning and doffing required safety equipment.

87. Upon information and belief, over time, these practices have resulted in Plaintiff, and similarly situated members of the putative 216(b) Class, working overtime for which they have not been compensated.

88. Defendants' practice of editing time entries violates wage and hour regulations.

89. Defendants stated policy of not paying employees for overtime less than 30 minutes is a violation of the FLSA.

90. Defendants regularly required Plaintiff and other members of the 216(b) Class, to work more than forty (40) hours per week for which they were not properly compensated.

91. Defendant violated the FLSA with respect to the Named Plaintiff and the 216(b) Class by, *inter alia*, failing to compensate them at time and one-half times their regular rates for all hours worked over forty (40) hours in a workweek.

92. The Named Plaintiffs and the 216(b) Class Members were not exempt from receiving FLSA overtime benefits.

93. Defendants know that the FLSA requires overtime payment for all hours worked in excess of forty (40) hours per week.

94. Defendants have willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the 216(b) Class Members are entitled.

95. The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay the Named Plaintiff and the 216(b) Class Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

96. As a direct and proximate result of Defendant's conduct, the Named Plaintiff and the 216(b) Class Members have suffered and continue to suffer damages.

97. The Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available, on behalf of himself and the 216(b) Class Members.

## COUNT II
## RETALIATION (WRONGFUL DISCHARGE)
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

98. All of the preceding paragraphs are re-alleged as if fully rewritten herein.

99. Plaintiff complained to Defendants about not compensating employees for all hours worked.

100. Defendants were aware of these complaints.

101. At least one foreman warned Plaintiff that his complaints were making him a target of management.

102. Thereafter, Plaintiff was terminated under the pretext that he sabotaged a safety test.

103. There was a causal connection between Plaintiff's protected activity and his termination.

104. Defendant willfully terminated Plaintiff because he complained about Defendants' unlawful pay practices.

105. Plaintiff has been damaged by the retaliatory termination of his employment such that he is entitled to damages therefore, including back pay, front pay, liquidated damages and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiff requests judgment against Defendants, jointly and individually, for an Order:

A. Certifying the proposed FLSA collective action;

B. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the 216(b) Class apprising them of the pendency of this action, and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

C. Directing Defendant, at its own expense, to investigate and account for the number of hours actually worked by Named Plaintiff and the putative class and collective members per week, and if Defendant failed to keep accurate records in accordance, Named Plaintiff, the 216(b) Collective Members and the Rule 23 Class Members are entitled to prove their hours worked with reasonable estimates;

E. Awarding to the Named Plaintiff and the 216(b) Class Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

F. Awarding Named Plaintiff and the FLSA Class Members costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses.

G. Awarding Named Plaintiff and the FLSA Class Members such other and further relief as the Court deems just and proper;

H. Issuing an injunction prohibiting Defendants from engaging in present, ongoing and future violations of the FLSA;

I. Awarding Plaintiff back pay, front pay damages and liquidated damages arising from the unlawful retaliatory discharge of his employment;

J. Granting the Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

K. Rendering a judgment against Defendants for all damage, relief, or any other recovery whatsoever.

    Respectfully Submitted,

*/s/Sharon Cason-Adams*
Sharon Cason-Adams (0067550)
sharon@adamsliming.com
Adams & Liming, L.L.C.
Rivers Edge Corporate Center
1335 Dublin Road, Suite 104D
Columbus, Ohio 43215
(614) 488-2053-Telephone
(614) 488-2069-Facsimile

## **JURY DEMAND**

Plaintiffs thereby demands trial by jury on all issues triable before a jury.

                                      */s/Sharon Cason-Adams*_____
                                      SHARON CASON-ADAMS (0067550)