IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **FLOYD COZORT,** | ) CASE NO. 2:18-CV-814 |
| Plaintiff, | ) |
| | ) JUDGE GRAHAM |
| | ) MAGISTRATE VASCURA |
| v. | ) |
| | ) JOINT MOTION FOR APPROVAL |
| **BUCKINGHAM COAL Co., LLC** | ) OF SETTLEMENT |
| | ) |
| Defendants. | ) |

The parties respectfully and jointly move the Court to approve the proposed settlement reached by the parties and memorialized in the Stipulation and Agreed Order by and among the WLB Plan Administrator, the Claims Administrator and the FLSA Plaintiffs with Respect to FLSA Proofs of Claim ("Stipulation") attached as Exhibit 1. The Stipulation seeks to resolve all individual, class, and collective wage-and-hour claims that were or could have been brought in this Action. For the reasons stated in the following Memorandum in Support, the parties hereby respectfully request that this Court approve the settlement reached.

Respectfully submitted,

| | |
|---|---|
| */s/ Sharon Cason-Adams* | */s/ Leigh Anne Williams* |
| Sharon Cason-Adams (0067550) | Leigh Anne Williams (0082120) |
| Agee Clymer Mitchell & Portman | Porter, Wright, Morris & Arthur LLP |
| 140 East Town Street, Suite 1100 | 41 South High Street, Suite 3000 |
| Columbus, OH 43215 | Columbus, OH 43215 |
| Telephone: 614-221-3318 | Telephone: 614-227-2000 |
| Facsimile: 614-221-7308 | Facsimile:614-227-2100 |
| scasonadams@ageeclymer.com | lwilliams@porterwright.com |
| *Attorney for Plaintiffs* | *Attorney for Defendants* |

1

**MEMORANDUM IN SUPPORT**

This case has been stayed pending completion of Defendants' bankruptcy since November 5, 2018. (Doc. 7). Bankruptcy Proofs of Claim were subsequently filed on behalf of all Plaintiffs in this action. The Stipulation (entered by the Bankruptcy Court on July 28, 2020) resolves those claims in the bankruptcy proceeding.

If approved by this Court, the Stipulation will provide immediate payments to the Plaintiffs holding priority claims and future payments to the Plaintiffs with general unsecured claims.

The Stipulation was negotiated by experienced counsel over the course of several weeks. The parties respectfully submit that the proposed Stipulation is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following documents are respectfully submitted for approval or entry by the Court:

Exhibit 1: Stipulation and Agreed Order;

Exhibit 2: Proposed Final Order

The following sections of this motion explain the nature of the Action, the negotiations, the principal terms of the Stipulation, and the propriety of approving the Stipulation and its proposed distributions of proceeds.

**I.    The Action.**

Plaintiff Floyd Cozort filed this Action in the United States District Court for the Southern District of Ohio, Eastern Division on August 9, 2018. (Doc. 1). There are twelve "opt-in" Plaintiffs who joined the action as party-Plaintiffs ("Opt-In Plaintiffs"). Plaintiff's Collective Action Complaint alleged that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to compensate Plaintiffs for time spent donning and doffing required safety equipment and by arbitrarily editing employee timesheets. Plaintiffs allege that these violations of wage and hour

regulations resulted in underpayment/non-payment of overtime pay for a period of at least three years.

Cozort and the Opt-in Plaintiffs were non-exempt employees of Defendant Buckingham Coal Co. LLC and therefore entitled to be paid overtime compensation of "not less than one and one-half times their regular rate for all hours worked in excess of forty hours in a workweek 29 U.S.C. §207(a)(1).

Defendants deny these alleged violations but filed bankruptcy before the issues could be litigated.

## II.     Defendants' Bankruptcy.

On October 9, 2018 Defendants filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas, case no. 18-35672.

On December 5, 2018 Plaintiffs, by and through Counsel, filed proofs of claim in the bankruptcy proceeding to protect their interest in unlawfully withheld and unpaid overtime wages. Nine of the opt-in Plaintiffs were current (or recently-terminated) employees entitled to file priority claims because their claims were based on wages earned within 180 days before the bankruptcy petition was filed. The remaining four, (including Cozort) were former employees and entitled to file only general unsecured claims.

On March 2, 2019 the Bankruptcy Court entered an Order Confirming the Amended Joint Chapter 11 Plan of Westmoreland Coal Company and Certain of its Debtor Affiliates (which includes Defendants herein) ("Chapter 11 Plan"). Pursuant to the Chapter 11 Plan, the Plan

Administrator supervises and administers the resolution, settlement, and/or payment of all allowed claims against the Debtors (here, Defendants).[1]

### III. Discovery and Due Diligence

Due to the stay in place in this action, there was no discovery exchanged between the parties. Plaintiffs' estimation of damages are based upon Plaintiffs' allegations related to Defendants' timekeeping practices and how those practices adversely affected them. Defendants' Bankruptcy Counsel provided Plaintiffs' Counsel with applicable rates of pay and total number of days worked by each Plaintiff during the applicable periods, including days worked during the 180 days before the bankruptcy was filed.

### IV. The Negotiations

On or about May 28, 2020 Counsel for Plaintiffs entered negotiations with Counsel for the Defendants and the Plan Administrator to determine which of Plaintiffs claims would be allowed and the amount of each claim. But for a negotiated agreement, the Administrator would have filed objections to Plaintiffs' claims which would then be litigated in the bankruptcy proceeding.

The parties exchanged detailed analyses for each Plaintiffs' hours worked and pay records, examining the total days worked and total potential damages for unpaid overtime. The parties re-negotiated the nature of three Plaintiffs' claims, converting them from general unsecured to priority. Through phone calls and emails, Plaintiffs and Defendants' counsel negotiated a resolution of this matter. Those negotiations ultimately produced the agreed upon Stipulation set forth herein. The Stipulation was approved by the Bankruptcy Court on 7/28/2020.

---

[1] See Stipulation.

**V.      The Terms.**

The Stipulation and Agreed Order defines the amount of each Plaintiff's "allowed" claim(s) (as that term is defined by the Bankruptcy Court) and defines the terms of payment. Every Plaintiff in this case holds a general unsecured claim for unpaid hours worked outside of the 180-day priority period. Nine of the Plaintiffs also hold priority claims for unpaid hours worked within the 180-day priority period. If approved by this Court, the Plaintiffs holding priority claims will be paid the amount of their priority claims as set forth in the Stipulation and Agreed Order, and will be paid a pro-rata share of their unsecured claims as and when such payments are made in the course of the bankruptcy proceedings. The four Plaintiffs holding only general unsecured claims will receive a pro-rata share of their unsecured claim as set forth in the Stipulation and Agreed Order. Counsel for Debtors (Defendants) and the Claims Administrator estimated the unsecured claims would be paid at a rate between 3-5% of their unsecured claims.

For example, Plaintiff Robert McClaughlin worked 129 days during the priority period. For each day worked, it was assumed, using Plaintiffs' allegations as stated in the Complaint, that Defendants failed to compensate him for 30 minutes spent donning and doffing required safety gear. It was also assumed that he was entitled to be compensated for those 30 minutes at his full overtime rate ($46.27/hour). Thus, McLaughlin's priority claim is allowed for $2,984.74 (.5 x 129 x $46.27). McLaughlin also worked 856 days that were outside the 180-day priority period. With the same assumptions in place, McClaughlin has a general unsecured claim in the amount of $19,805.70 (.5 x 856 x 46.27). If and when unsecured claims are paid at a distribution rate of, for example, 3%, he will receive: $594.17.

Pursuant to the Stipulation and Agreed Order, Plaintiffs' counsel will receive $10,000 for attorneys' fees (40 hours at $250 per hour). This was a compromised amount less than the actual

5

time spent on the case. Plaintiffs' Counsel also represented them in the bankruptcy proceeding by filing proofs of claims, in negotiations related to identification of the appropriate Defendant entity, and negotiation of the Stipulation. The payment to counsel is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action.

## VI. The Propriety of Approval.

The proposed Stipulation is subject to approval by the Court pursuant to § 216(b) of the FLSA and as confirmed via correspondence with the Court dated July 10, 2020. As shown below, Court approval is strongly supported by the case law.

### A. The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the Settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the Settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the

>likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

Here, the seven-factor standard supports approval of the settlement. Plaintiffs' counsel have experience litigating FLSA claims, and there is no fraud or collusion. Wage-and-hour cases for groups of employees are always expensive and time-consuming, and therefore, the expense and likely duration of continued litigation favor approval, especially in light of Defendants' bankruptcy. The parties engaged in document review, data analysis, interviews of sample group members, and due diligence prior to the negotiations, and the issues were well understood. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. Counsel on both sides support the settlement, as do the Plaintiffs themselves.

### B. The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action Settlement, "a court must ensure that the distribution of the Settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed individual settlement payments compensate Plaintiffs (holding priority claims) for ½ hour of unpaid overtime for each day worked during the priority period. Individual payments are listed in the Stipulation (Ex. 1). Plaintiffs who worked hours outside the priority period will receive only a small percentage payment, but the base amount of damages upon which that percentage will be calculated is fixed. Without this agreement, the fact of unpaid overtime, as well as the amount, would have been hotly contested. If the Plaintiffs

prevailed in litigation, the nature of their claims (whether priority or general unsecured) would have led to the same result.

### C. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir. 1984)).

In the present case, the efforts of Plaintiffs' counsel resulted in proposed settlement payments to the named Plaintiff and Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims. The proposed payment to Plaintiffs' counsel is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action.

Prosecuting complex litigation on a class basis is always difficult and time-consuming. The tasks required of Plaintiffs' counsel in this case included pre-litigation investigation of Plaintiffs' claims; preparation of the Complaint, communication with Opt-in Plaintiffs, filing of Opt-in forms, reviewing documentation, protecting Plaintiffs' interests by filing proofs of claim in the bankruptcy proceeding, negotiating with bankruptcy counsel regarding identification of

8

appropriate defendant entities, negotiating with bankruptcy counsel to achieve settlement of the claims.

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' counsel is proper and reasonable and fulfills the purpose and intent of the FLSA's fees provision.

### VII. Conclusion.

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached hereto.

Respectfully submitted,

| | |
|---|---|
| */s/ Sharon Cason-Adams* | */s/ Leigh Anne Williams* |
| Sharon Cason-Adams (0067550) | Leigh Anne Williams (0082120) |
| Agee Clymer Mitchell & Portman | Porter, Wright, Morris & Arthur LLP |
| 140 East Town Street, Suite 1100 | 41 South High Street, Suite 3000 |
| Columbus, OH 43215 | Columbus, OH 43215 |
| Telephone: 614-221-3318 | Telephone: 614-227-2000 |
| Facsimile: 614-221-7308 | Facsimile:614-227-2100 |
| scasonadams@ageeclymer.com | lwilliams@porterwright.com |
| *Attorney for Plaintiffs* | *Attorney for Defendants* |

13561655v2